STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; State Farm Fire & Casualty Insurance Company

v.

MIDTOWN MEDICAL CENTER, INC.; Ronald Nestel; Simon Fishman; Frank Solomon, D.C.; Paul Bove, D.C.; Physicians Management Company, Inc.; Tabor Chiropractic Center, P.C.,

Simon Fishman and Miriam Fishman, Appellants.

State Farm Mutual Automobile Insurance Company; State Farm Fire & Casualty Insurance Company

v.

Midtown Medical Center, Inc.; Ronald Nestel; Simon Fishman; Frank Solomon, D.C.; Paul Bove, D.C.; Physicians Management Company, Inc.; Tabor Chiropractic Center, P.C.,

Simon Fishman and Miriam Fishman, Appellants.

Nos. 08–4387, 09–2621.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 15, 2010.

Opinion filed: July 19, 2010.

Diana R. Kadash, Esq., Jon C. Sirlin, Esq., Sirlin, Gallogly & Lesser, Philadelphia, PA, Glenn A. Zeitz, Esq., Haddonfield, NJ, for State Farm Fire & Casualty Co., Midtown Med. Ctr. Inc.

Todd J. Cook, Esq., Stevens & Lee, Reading, PA, Samuel Fishman, Esq., Philadelphia, PA, Dana P. Garrity, Esq., James C. Schwartzman, Esq., Stevens & Lee, Philadelphia, PA, for Tabor Chiropractic, Ronald Nestel, Simon Fishman.

Harvey A. Sernovitz, Esq., Philadelphia, PA, for Paul Bove.

Before: AMBRO, CHAGARES, and STAPLETON, Circuit Judges.

## OPINION

CHAGARES, Circuit Judge.

Simon and Miriam Fishman appeal the District Court's orders establishing and enlarging a constructive trust in favor of State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Insurance Company (collectively, "State Farm") against the Fishmans' marital residence. The Fishmans also appeal the District Court's decision to grant an equity interest in the Fishmans' marital residence. For the reasons set forth below, this Court will vacate the District Court's orders and remand for further proceedings.

### I.

Because we write solely for the benefit of the parties, we recite only the essential facts. State Farm brought a suit against Simon Fishman and several co-defendants alleging a scheme to defraud State Farm by submitting false medical reports, bills, and other documents to State Farm in an attempt to obtain payment for medical treatment purportedly provided to individuals insured by State Farm or to individuals who claimed to have been injured by individuals insured by State Farm. On February 16, 2006, the jury returned a verdict against Simon Fishman, finding him liable to State Farm for, *inter alia,* common law fraud and statutory insurance fraud. Miriam Fishman, Simon Fishman's spouse, was not a defendant in the underlying action. The District Court entered judgment against Simon Fishman on April 4, 2006, awarding State Farm compensatory damages in the amount of $331,046 and punitive damages in the amount of $1,915,200. The judgment also awarded State Farm $304,000 in punitive damages against Midtown Medical Center, Inc. and entitled State Farm to recover the sum from Simon Fishman. The District Court

awarded State Farm attorneys' fees and costs totaling $650,113.78.

On April 28, 2006, State Farm commenced collection proceedings against Simon Fishman by writ of execution. Simon Fishman filed a claim for exemption on May 26, 2006, asserting, *inter alia*, an exemption for the Fishmans' marital home, "owned jointly with non-judgment debtor spouse, Miriam Fishman, as tenants by the entireties." Joint Appendix ("JA") 123. For reasons that are unclear from the record, the District Court did not rule on the exemption. On November 5, 2007, State Farm moved to strike Simon Fishman's claim for exemption.

On September 9, 2008, the District Court held a hearing on Simon Fishman's claim for exemption and State Farm's motion to strike. At the hearing, State Farm moved into evidence ten checks written by Simon Fishman to National City Mortgage Company between August 2002 and May 2003 totaling $17,983.85. The checks, mortgage payments on the marital residence, were drawn on a Fleet Bank account in the names of Alexander Fishman,[1] Simon Fishman, and Miriam Fishman. On September 10, 2008, the District Court issued an order establishing a $17,983.85 constructive trust against the Fishmans' marital residence in favor of State Farm.

On September 24, 2008, Simon Fishman moved for reconsideration. On October 8, 2008, State Farm filed a response in opposition to Simon Fishman's motion for reconsideration requesting that the District Court increase the constructive trust based on an additional mortgage check and grant State Farm the appreciated value of the constructive trust by awarding them a nineteen percent equity interest in the Fishmans' marital residence.

On October 14, 2008, the District Court denied Simon Fishman's motion for reconsideration, increased the constructive trust to $43,822.64, and granted State Farm a nineteen percent equity interest in the Fishmans' marital residence. Simon Fishman and Miriam Fishman, as an interested third-party, appealed to this Court on October 30, 2008 from both the September 10, 2008 order establishing the constructive trust and the October 14, 2008 order enlarging the trust and granting State Farm an equity interest in the marital residence.

While the appeal was pending, on May 11, 2009, the District Court granted a motion by State Farm to increase the constructive trust to $93,838.79 and the equity interest to 40.79 percent. The Fishmans filed an Amended Notice of Appeal on May 20, 2009. We consolidated both appeals.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.[2]

---

1. Alexander Fishman is one of Simon Fishman's brothers. State Farm alleges that certain checks signed by Alexander Fishman were fraudulently signed after Alexander Fishman was deceased. The Fishmans deny this allegation and dispute the claim that Alexander Fishman is deceased.

2. The District Court lacked jurisdiction to enter its May 11, 2009 order. The Fishmans filed a Notice of Appeal on October 30, 2008 appealing the District Court's September 10 and October 14, 2008 orders. "[T]he timely filing of a notice of appeal is an event of

jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal." *Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir.1985) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)). The District Court lacked jurisdiction to increase the size of the constructive trust and equity interest while an appeal of the District Court's decision to establish the constructive trust and equity interest was pending before this Court. Accord-

State Farm argues that we lack jurisdiction over this appeal because the District Court's orders are not final. This Court has "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 131 (3d Cir.2009) (citations omitted). We give the § 1291 finality requirement a " 'practical rather than a technical construction.' " *Penn. Family Inst., Inc. v. Black*, 489 F.3d 156, 162 (3d Cir.2007) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 261 (3d Cir.2005)). We have noted that post-judgment orders are usually final decisions within the meaning of § 1291 as long as the district court has completely disposed of the matter. *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 678 (3d Cir.1986). Review of post-judgment orders is less likely to run afoul of our policy against interfering with trial court proceedings and, if such orders were not considered final, "an aggrieved party would for all practical purposes be denied meaningful review" of the trial court's post-judgment orders. *Id.*

■ The challenged orders followed entry of judgment in favor of State Farm and settled Simon Fishman's claim for exemption and State Farm's requests for a constructive trust against the marital residence and an equity interest in the marital residence. We hold that they are final decisions under § 1291. Were we to conclude otherwise, there is little prospect that further proceedings would occur to make them final and there would be no opportunity to review the District Court's

decisions. Accordingly, we exercise jurisdiction over the District Court's orders.

We normally review a district court's factual findings for clear error and its legal conclusions de novo. *See Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005). However, the District Court's orders provided no factual findings nor did they include any legal conclusions. Our standard of review when considering a grant of equitable remedies is whether the district court properly exercised its discretion. *Voest–Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 211 (3d Cir.1990).

## III.

■ The Fishmans argue that the District Court erred when it established a constructive trust against the Fishmans' marital residence because State Farm failed to meet its burden of proof and because State Farm's claim was time-barred. The Fishmans also assert that the District Court's order granting State Farm an equity interest in the marital residence is not supported by law.

### A.

As the Supreme Court of Pennsylvania has explained, "[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Balazick v. Ireton*, 518 Pa. 127, 541 A.2d 1130, 1133 (1988) (quoting *Pierro v. Pierro*, 438 Pa. 119, 264 A.2d 692, 696 (1970)). "One who seeks to construct a trust bears a heavy burden of proof; the evidence must be clear, direct, precise and convincing. [U]nless the evi-

---

ingly, we will vacate the District Court's May 11, 2009 order. On remand, the District Court may, of course, consider whether any

equitable remedy to which State Farm may be entitled should take account of these additional amounts.

dence of the existence of [a constructive trust] is of the highest probative value, equity should not act to convert an absolute ownership into an estate of lesser quality." *Roberson v. Davis,* 397 Pa.Super. 292, 580 A.2d 39, 41 (1990) (alterations in original) (citations omitted). Pennsylvania law is clear that "if only *one* spouse is a debtor, entireties property is immune from process, petition, levy, execution or sale." *Klebach v. Mellon Bank, N.A.,* 388 Pa.Super. 203, 565 A.2d 448, 450 (1989) (emphasis in original). However, when the tenancy by the entireties was created in fraud of creditors, the property is not protected from execution. *Patterson v. Hopkins,* 247 Pa.Super. 163, 371 A.2d 1378, 1382–83 (1977).

State Farm argued before the District Court that the Fishmans paid their mortgage using funds directly obtained from the fraudulent scheme. In the alternative, State Farm argued that Simon Fishman was the sole wage-earner in the family, thus the mortgage payments are attributable solely to the judgment debtor and are not protected by the entireties property. The Fishmans disputed both of these allegations, and asserted that they made the mortgage payments using joint savings from a used automobile dealership that Simon Fishman owned and the Fishmans operated together until 1995.

The District Court did not resolve these disputed facts in holding that State Farm was entitled to a constructive trust. Rule 52(a)(3) of the Federal Rules of Civil Procedure[3] does not require the District

Court to articulate its factual findings. Nonetheless, "where, as here, the district court is presented with conflicting positions of substance as to how it should exercise its discretion … it is a salutary practice to give the litigants, either orally or in writing, at least a minimum articulation of the reasons for its decision." *Interpace Corp. v. City of Phila.,* 438 F.2d 401, 404 (3d Cir.1971); *see also Stewart v. Gates,* 987 F.2d 1450, 1454 (9th Cir.1993) ("[A]bsent some indication of how the district court's discretion was exercised, this court has no way of knowing whether that discretion was abused." (citations omitted)); *Browning v. Kramer,* 931 F.2d 340, 345–46 (5th Cir.1991) (vacating and remanding award of attorney fees, despite Fed.R.Civ.P. 52(a), because district court failed to identify the specific conduct that "unreasonably and vexatiously multiplied the proceedings" under 28 U.S.C. § 1927). State Farm presented two potential bases for a constructive trust to the District Court, and we cannot be sure which theory the District Court relied upon in granting the equitable relief. Further, given that this is a case of disputed facts, a minimal amount of evidentiary analysis by the District Court is necessary to enable us to resolve adequately claims of error. The District Court's lack of findings precludes meaningful appellate review of the challenged orders. Accordingly, we will vacate the District Court's September 10 and October 14, 2008 orders and remand to give the District Court an opportunity to remedy the deficiency.[4]

---

**3.** "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion." Fed. R.Civ.P. 52(a)(3).

**4.** The Fishmans also argue that State Farm is time-barred from challenging the purported fraudulent transfers under the Pennsylvania Uniform Fraudulent Transfer Act (PUFTA).

*See* 12 Pa. Const. Stat. Ann. § 5109(1) (requiring a cause of action with respect to a fraudulent transfer to be brought "within four years after the transfer was made" or "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant"). State Farm argues that the PUFTA time limitations do not apply to its claim, and in the alternative, that the PUFTA limita-

## B.

■ In light of our decision to remand for further proceedings, we will address the Fishmans' remaining argument to provide some guidance to the District Court. The Fishmans argue that the District Court erred in awarding State Farm an equity interest in the Fishmans' marital residence. Instead, they contend, even if State Farm met its burden of demonstrating that the Fishmans' mortgage payments were fraudulent transfers, the proper remedy would be an equitable lien against the property. In response, State Farm argues that because Simon Fishman mingled ill-gotten assets into the equity of his marital residence after he was aware of State Farm's action against him, it is entitled to a constructive trust and a proportionate share of the real estate. For support, State Farm cites to *Provencher v. Berman*, 699 F.2d 568, 569–71 (1st Cir. 1983), in which the Court of Appeals for the First Circuit held that where a conscious wrongdoer used commingled funds to buy property, the beneficiary of the resulting constructive trust may take title to a proportionate share of the entire property, subject to the mortgage. State Farm also points to § 210(2) of the Restatement (First) of Restitution, "Effect Of Acquisition Of Other Property With Mingled Funds," which states that "[i]f the wrongdoer knew that he was acting wrongfully, the other is entitled at his option to a share of the property in such proportion as his money bore to the whole

amount of the fund." Restatement (First) of Restitution § 210(2) (1937).

Neither *Provencher* nor § 210(2) of the Restatement applies to this case; State Farm does not allege that the Fishmans purchased the marital residence with commingled funds. It is undisputed that the Fishmans purchased their residence on November 27, 1992, approximately six years before State Farm alleged the conspiracy took place. The court in *Provencher* awarded the beneficiary of the constructive trust an undivided share of the property equivalent to the percentage of the purchase price (less mortgage loans) paid with its funds. 699 F.2d at 570. That formula does not fit the facts of this case—the percentage of the marital residence purchase price, less mortgage loans, paid with State Farm's funds is zero. Rather, State Farm's allegation is that the Fishmans used the commingled funds to pay off their mortgage loan, not acquire the property.

According to the Restatement (First) of Restitution,

> When a person wrongfully uses property of another in discharging an obligation of the wrongdoer to a third person or a lien held by a third person upon his property, the other is entitled to be subrogated to the rights which the third person had before the obligation or lien was discharged.

Restatement (First) of Restitution § 207 (1937); *see also id.* § 162.[5] The Restate-

---

tions period was tolled by Simon Fishman's efforts to fraudulently conceal the mortgage payments.

The Fishmans raised this issue before the District Court, (*see* Mem. of Law of Def. Simon Fishman and Third–Party Miriam Fishman in Opp'n to Pl.'s Mot. to Strike Simon Fishman's Claim for Exemption 7). However, the District Court failed to address it. We decline to consider this claim in the first

instance. Rather, on remand, the District Court should address the Fishmans' claim that State Farm is time-barred from challenging the alleged fraudulent transfers.

**5.** Pennsylvania has cited with approval the principles in the Restatement of Restitution regarding subrogation, *see, e.g., Assoc. Hosp. Serv. of Phila. v. Pustilnik*, 497 Pa. 221, 439 A.2d 1149, 1151 (1981); *Gladowski v. Felczak*, 346 Pa. 660, 31 A.2d 718, 720 (1943).

ment clearly distinguishes between a wrongdoer who uses ill-gotten funds to acquire the property (thus entitling the trustee to a constructive trust) and one who uses such funds to discharge a mortgage. *Id.* § 162 cmt. a ("Just as the establishment and enforcement of a constructive trust is a method of giving the plaintiff restitution where the defendant has acquired property from the plaintiff or through the disposition of the plaintiff's property, so where property of the plaintiff is used in discharging an obligation or lien he obtains restitution through subrogation."); *cf. In re Linsey,* 296 B.R. 582 (Bankr.D.Mass.2003) (imposing an equitable lien in favor of creditor where debtor used commingled funds to improve, rather than acquire, property); Restatement (First) of Restitution § 206 (1937) ("Where a person wrongfully uses property of another in making improvements upon property already owned by wrongdoer, the other is entitled to an equitable lien but is not entitled to enforce a constructive trust."). An illustration in the Restatement reinforces the point that a constructive trust is not the appropriate equitable remedy in this case.

> A owns Blackacre which is subject to a mortgage for $10,000 to B. A steals $10,000 from C and pays the money to B in discharge of the mortgage. C is subrogated to the rights which B had as mortgagee.

*Id.* § 207 cmt. b, illus. 1 (1937). In the case of a secured claim, such as a mortgage, the person entitled to be subrogated to the original creditor obtains an equitable lien. *Id.* § 162 cmt. e (1937); *see also Gladowski,* 31 A.2d at 720 (imposing equitable lien on property in favor of plaintiffs with right of subrogation to judgment lien); *Williams v. Benzing,* 53 Pa. D. & C. 559, 562 (Pa.Com.Pl.1945) (granting equitable lien to secure repayment of moneys used to discharge liens or encumbrances against property).

Accordingly, on remand, the District Court must determine whether State Farm has demonstrated sufficient facts to enable the District Court to exercise its discretion to impose an equitable remedy. If it decides State Farm has met its burden, it should be guided by its understanding of the principles of restitution adopted by Pennsylvania courts in fashioning a remedy.

### IV.

For the reasons above, we will vacate the District Court's orders, and remand for further proceedings consistent with this opinion.